IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEKEMA GENTLES | : | |
|     *Plaintiff*, | : | |
| | : | CIVIL ACTION |
| v. | : | NO.: 19-1199 |
| | : | |
| BOROUGH OF POTTSTOWN, et al., | : | |
|     *Defendants*. | | |

**MEMORANDUM**

**JONES, II   J.**                                                                                                     **November 19, 2019**

*Pro se* Plaintiff Sekema Gentles ("Plaintiff") commenced this civil rights action under 42 U.S.C. § 1983 against Defendants Borough of Pottstown (the "Borough"), Administrators of the Borough of Pottstown Council (the "Council"),[1] and Corporal Jamie O'Neill ("Defendant O'Neill"),[2] alleging a violation of his Fourth, Fifth, and Fourteenth Amendment rights. (Compl. ¶¶ 10-12, ECF No. 1). In addition, Plaintiff brings forth state law claims for Malicious Prosecution and Intentional Infliction of Emotional Distress against Defendant O'Neill. (Compl. ¶¶ 28-34). Pending before this Court is Defendants' Motion to Dismiss (ECF No. 6) Plaintiff's Complaint (ECF No. 1) for failure to state a claim in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' Motion is granted, and Plaintiff is given leave to amend.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts of this case relate to Defendant O'Neill's arrest of Plaintiff, and this Court construes them in the light most favorable to Plaintiff. On March 25, 2017, Defendant O'Neill notified Plaintiff of an outstanding Protection from Abuse Order ("PFA") against Plaintiff.

---

[1] Plaintiff brings suit against Council members Daniel Weand, Rita Paez, Carol Kulp, Joseph Kirkland, and Ryan Proscal in their official capacity. (Compl. ¶ 10, ECF No. 1). *See infra* note 7.
[2] Plaintiff brings suit against Defendant O'Neill in both his official and personal capacities. (Compl. ¶ 12.)

(Compl. ¶ 13). Plaintiff met with Defendant O'Neill and discussed three text messages sent from the internet phone number, 205-240-4521. (Compl. ¶ 14). On March 26, 2017, while in possession of an affidavit of probable cause, Defendant O'Neill performed an on-site arrest of Plaintiff "without being witness to a crime[.]" (Compl. ¶¶ 15-17). Plaintiff asserts Defendant O'Neill arrested him despite no established nexus between Plaintiff and the texts, which violated the PFA.[3] (Compl. ¶ 16). After a hearing on April 4, 2017, the PFA was lifted. That same day, the Commonwealth withdrew the related criminal contempt charge. (Compl. ¶ 18).

Plaintiff commenced this action on March 21, 2019, alleging that his arrest violated his rights pursuant to the Fourth Amendment because Defendant O'Neill lacked the probable cause necessary to make said arrest. (Compl. ¶ 25). Additionally, Plaintiff attached state law claims of malicious prosecution and intentional infliction of emotional distress against Defendant O'Neill for the purported illegal arrest and the prosecution resulting therefrom. (Compl. ¶ 20). Plaintiff further alleges that the Council should be held liable for allowing the Borough of Pottstown Police Department ("BPPD") to arrest black men without probable cause.[4] (Compl. ¶ 24).

Defendants filed the instant Motion to Dismiss, arguing Plaintiff fails to state a claim upon which relief can be granted. (Defs.' Mot. Dismiss 2, ECF No. 6). Plaintiff filed a Response in Opposition thereto (ECF No. 7) prompting Defendants to file a Reply Brief (ECF No. 10)[5], which was then followed by a sur-reply from Plaintiff (ECF No. 13).[6] After a careful

---

[3] According to Plaintiff, prior to the arrest, Defendant O'Neill had already determined said number "was an internet number with no probable connection to the Plaintiff." (Compl. ¶ 14).
[4] *See* discussion *infra* Section I.A.
[5] On July 9, 2019, Defendants filed a Motion for Leave to File a Reply Brief in Support of Their Motion to Dismiss (ECF No. 8), which this Court granted on July 16, 2019 (ECF No. 9).
[6] Plaintiff filed a Motion for Leave to File a Response to Defendants' Reply Brief in Support of Their Motion to Dismiss (ECF No.11), with the proposed Response attached therein. This Court interpreted said Motion as Plaintiff's Sur-Reply and granted Plaintiff leave to file same (ECF No. 12).

review of the relevant filings and for the reasons that follow, this Court grants Defendants' Motion to Dismiss in full.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's *pro se* complaint must present a plausible claim. Courts reviewing a motion to dismiss pursuant to Rule 12(b)(6) must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2008)); *see also Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). Despite this rigorous standard, the Supreme Court has explained that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Haines v. Kerner*, 92 S. Ct. 594, 596 (1972)). However, this liberality does not relieve a *pro se* plaintiff of their obligation "to state a claim to relief that is plausible on its face" and that shows an entitlement to relief. *Fantone*, 780 F.3d at 193 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

To satisfy facial plausibility, a claim's factual content must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 325 (3d Cir. 2019) (internal citation omitted). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. Although the court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff . . . [it is] not compelled to accept unsupported conclusions and unwarranted

inferences… or a legal conclusion couched as a factual allegation." *Estate of Roman v. City of Newark*, 914 F.3d 789, 795-96 (3d Cir. 2019) (internal quotation marks and citations omitted).

### DISCUSSION

**I.     Plaintiff's Claims Against Defendants Borough of Pottstown and Pottstown Borough Council**[7]

Plaintiff alleges that the Council "has failed to correct the de facto policy, practice or custom of playing hunches and arresting men of color without reasonable suspicion or probable cause after notice thereof, by citizen complaint and civil suit." (Compl. ¶¶ 21-22). After a liberal interpretation of the Complaint, this Court holds that Plaintiff has failed to plausibly state a claim against Defendants by failing to plead a constitutional violation or *Monell* liability.

   A.     *Monell* Claim

To successfully state a claim under 42 U.S.C. § 1983, Plaintiff must plausibly plead the deprivation of a right secured by federal law by a person acting under color of state law. *See Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010); *see also Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Additionally, to survive the Motion to Dismiss, Plaintiff must plead the elements of municipal liability set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A plaintiff may proceed in a suit against a municipal defendant in two ways[8]—either by

---

[7] In addition to the Council, Plaintiff names Defendants Weand, Culp, Paez, Kirkland, and Procal in their official capacities. *See supra* note 1. The entire suit is, therefore, no more than a suit against the Council as a whole. *See Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (internal quotation marks omitted) (quoting *Kentucky v. Graham*, 105 S. Ct. 3099, 3105 (1985)). Moreover, Plaintiff concedes that he sued the Council "and not its individual members." (Pl.'s Resp. Opp'n Defs.' Mot. Dismiss 4, ECF No. 7). As such, this Court will treat the suit as one against the Council.
[8] *See, e.g.*, *McGreevy v. Stroup*, 413 F.3d 359, 368 (3d Cir. 2005) ("Where the state actor is a municipality, a plaintiff must plead that an employee of the municipality (1) "acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity"; (2) "has individual policy making authority rendering his or her behavior an act of official government policy"; or (3) acted in an unconstitutional manner and "an official with authority has ratified the unconstitutional actions . . . rendering such behavior official for liability purposes.").

(1)"put[ting] forth that an unconstitutional policy or custom of the municipality led to his or her injuries" or (2) asserting that his or her injuries "were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019), *petition for cert. filed* (U.S. Nov. 6, 2019) (No. 19-593) (internal quotation marks and citations omitted); *Monell*, 436 U.S. at 690-93. Presently, Plaintiff embraces two theories in his allegations: (1) policy or custom; and, (2) failure or inadequacy. However, the Complaint fails to present a plausible claim under either theory.

With regard to the first theory, Plaintiff fails to plead any facts consistent with the existence of either a policy or custom. To establish a *Monell* claim based on a policy or custom, the Third Circuit outlines how a plaintiff must proceed:

> Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. Custom can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.

*Estate of Roman*, 914 F.3d at 798. Despite the Council's authority to establish municipal policies under 8 Pa. C.S.A. § 1006, the Complaint fails to refer to any actions taken by said Defendant. Instead, Plaintiff summarily states the Council "acquiesced, approved, implemented, enforced, encouraged and sanctioned de facto policies, practices and/or customs exhibiting malice and indifference to [his] constitutional, statutory, civil and common law rights[.]"[9] (Compl. ¶ 26).

---

[9] In addition, Plaintiff argues he deserves declaratory and injunctive relief "for racially discriminatory policies/practices resulting in the use of racial amicus and bias in place of reasonable suspicion supporting probable cause." (Pl.'s Resp. Opp'n Defs.' Mot. Dismiss 2). Plaintiff's averments amount to no more than conclusory assertions, supported by legal conclusions, pled consistent with the elements of the identified causes of action.

In relation to a policy or custom, Plaintiff does not address which actions the Council has taken to that effect, nor does he present any facts to support his conclusion that the challenged police actions were either well-settled or permanent. Plaintiff asserts he has been arrested twice without probable cause. (Compl. ¶ 21). Even if Plaintiff's statement about his arrests lacking probable cause were a factual assertion worthy of being treated as true, that statement does not establish anything close to a "well-settled" or "permanent" practice.[10] Accordingly, Plaintiff's *Monell* claim fails as to a municipal policy or custom because Plaintiff has failed to identify any specific policy that was violated or allege with anything more than unsupported conclusory allegations that there was a custom or culture that caused his supposedly illegal arrest.

With regard to the second theory, Plaintiff alleges a failure to adequately supervise the Council's officers and agents, "thereby preventing the use of police hunches to stop, detain and arrest men of color in the absence of probable cause." (Compl. ¶ 27). When a claim is "predicated on a failure or inadequacy[, the plaintiff] has the separate but equally demanding requirement of demonstrating a failure or inadequacy amounting to a deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106; *Jewel v. Ridley Twp.*, 497 F. App'x 182, 186 (3d Cir. 2012) (applying deliberate indifference standard to the failure to supervise claim).

Plaintiff's statement of facts includes only two references to the actions of the Council: (1) that based on "anecdotal information and belief[,] the BPPD[,] on enough occasions to establish a pattern, practice or custom[,] have stopped, detained and arrested men of color without reasonable suspicion or probable cause" (Compl. ¶ 21), and, (2) the Council "failed to

---

[10] *See Burke v. Twp. of Cheltenham*, 742 F. Supp. 2d 660, 675 (E.D. Pa. 2010) (Plaintiff "fails to present any facts regarding an official policy or custom on the part of the Township that caused civil rights violations to be made against him. Instead, he offers only bald assertions that such policies or customs existed without any support that would suggest that what happened to him… were not idiosyncratic actions of individual public actors.").

correct the de facto policy, practice or custom of playing hunches and arresting men of color without reasonable suspicion or probable cause after Notice thereof, by citizen complaint and civil suit" (Compl. ¶ 22). Plaintiff does not refer to the specific details making up the "anecdotal information." Furthermore, Plaintiff does not substantiate his belief, nor does he expand on his assertion that the Council had notice. Plaintiff's allegations require that this Court simply take him at his word—rather than set forth a sufficient factual basis from which the Court could reasonably infer Defendants' potential liability. Plaintiff's Complaint therefore fails to provide factual support that amounts to plausibility under either *Monell* theory. Additionally, Plaintiff's Opposition to the pending motion to dismiss is merely a reiteration of his allegations in the Complaint and provides the Court with no basis to reach another conclusion. (ECF Nos. 7, 13).

      B.      Fourth Amendment Violation

Plaintiff further alleges that the Council violated his Fourth Amendment rights. However, this claim—like the *Monell* claim discussed above—attempts to hold the municipality liable for an alleged violation of Plaintiff's Fourth Amendment rights, making it a *Monell* claim. This claim, in its entirety, reads:

> At all relevant times herein, Defendant Pottstown Borough Council [and] its Defendant Administrators, acting through its "BPPD" decided, developed, approved, acquiesced, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting malice and indifference to plaintiff's Fourth Amendment right under the United States Constitution, not to be stopped, detained, seized and arrested without probable cause.

(Compl. ¶ 24). Like the *Monell* claim, this claim is deficient in that it does not identify any policies or customs resulting from the Council's actions. It merely recites legal conclusions not entitled to be treated as true by this Court. As such, this claim is dismissed.

## II. Plaintiff's Claims Against Defendant Corporal Jamie O'Neill[11]

### A. Fourth Amendment Violation

Plaintiff asserts a Fourth Amendment violation by Defendant O'Neill, alleging said Defendant arrested him without probable cause. "Broadly stated, the Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*, 92 S. Ct. 839, 847 (1972)). The necessary "[p]robable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." *Id*. at 482-83. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (citing *Devenpeck v. Alford*, 125 S. Ct. 588, 593 (2003)). If "a police officer does arrest a person without probable cause, the officer may be liable in a civil rights suit for damages." *Orsatti*, 71 F.3d at 483.

Plaintiff was arrested for sending text messages in violation of an outstanding PFA. (Compl. ¶ 15). However, nothing in the Complaint would lead this Court to believe that the text messages alone would be insufficient to find probable cause for a PFA violation. Plaintiff ostensibly believes Defendant O'Neill lacked probable cause for the arrest because the number from which the texts originated was an "internet number with no probable connection to the Plaintiff." (Compl. ¶ 14). There are no facts to support this conclusion, save the fact that the messages originated from an internet number. Moreover, the Complaint does nothing to substantiate the lack of a "probable connection" or any nexus to Plaintiff. Without factual support, Plaintiff's claim against Defendant O'Neill does not rise to the necessary level of facial

---

[11] *See supra* note 2.

plausibility to survive a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1949 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."). As such, this claim against Defendant O'Neill shall be dismissed.

### III. Plaintiff's Remaining Claims

#### A. Plaintiff's Fifth Amendment and State Constitutional Claims

The Complaint cites violations of: (1) Plaintiff's federal constitutional rights, as secured in the Fourth, Fifth and Fourteenth Amendments; (2) Plaintiff's rights, as secured by the Pennsylvania state Constitution in Article I, §§ 1, 8, 9, and 13; and, (3) Plaintiff's rights under the common law of Pennsylvania. (Compl. ¶ 1). To the extent Plaintiff has suffered any violations of his Fifth Amendment rights, his Pennsylvania constitutional rights, or his rights pursuant to Pennsylvania common law, the Complaint does not assert any such causes of action. Apart from being listed in the Complaint's Introduction, these alleged violations are not discussed. (Compl. ¶ 1). Additionally, the Complaint is devoid of any facts indicating the alleged violation of these rights. Inasmuch as these claims are cognizable, the absence of facts renders them deficient. As such, these claims are dismissed.

#### B. State Law Malicious Prosecution Claim

In addition to his claim against Defendant O'Neill for a violation of his Fourth Amendment rights, Plaintiff also levels a malicious prosecution claim against the same Defendant. Under Pennsylvania law, a malicious prosecution claim requires proof that the defendant: "(1) instituted the proceedings (2) without probable cause with (3) actual malice and (4) that the proceedings terminated in favor of the plaintiff." *Hartpence v. Madison Twp.*, 617 F. App'x 158, 161 (3d Cir. 2015) (internal quotations omitted).

Defendant argues that Plaintiff's claim fails because probable cause existed for Plaintiff's arrest, negating the second and third elements of the claim. (Defs.' Mot. Dismiss ¶ 7, ECF No. 6). As already discussed, Plaintiff fails to allege facts plausibly suggesting Defendant O'Neill lacked probable cause to arrest him. Plaintiff correctly notes that "malice may be inferred from the absence of probable cause." (Pl.'s Resp. Opp'n Defs.' Mot. Dismiss 5, ECF No. 7). *See Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993) (discussing that lack of probable cause may lead to a presumption of malice). However, this inference is foreclosed by the Complaint's failure to establish that the arrest lacked probable cause. As this Court finds Plaintiff has plausibly pled neither (1) the absence of probable cause, nor (2) the existence of malice, this claim is dismissed.

C. Intentional Infliction of Emotional Distress

Plaintiff's final cause of action is a state law claim for intentional infliction of emotional distress ("IIED") against Defendant O'Neill. Pennsylvania courts embrace the Restatement approach to IIED, as found in Restatement (Second) of Torts § 46, and instruct a plaintiff to "prove that the defendant by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress." *Gray v. Huntzinger*, 147 A.3d 924, 927 (Pa. Super. Ct. 2016) (citing *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988 (Pa. 1987)). The appellate courts of Pennsylvania define extreme or outrageous conduct "as conduct that is so outrageous in character, so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005).

Plaintiff alleges Defendant O'Neill "intentionally and with malice inflicted emotional distress upon the Plaintiff imprisoning him without probable cause."[12] (Compl. ¶ 33). However, as previously noted, Plaintiff's legal conclusion about the lack of probable cause for his arrest need not be presumed true at the pleading stage. Similarly, Plaintiff's assertion that he was imprisoned "intentionally and with malice" is conclusory and fails to provide a single detail suggesting Defendant O'Neill engaged in any extreme or outrageous conduct, as required by Pennsylvania law. Accordingly, Plaintiff's IIED claim is dismissed.

## IV. Amendment to Complaint

Amendments to a complaint may be made as a matter of course, but only if the amendment occurs "within 21 days after serving it, or… if the pleading is one in which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). When a civil rights complaint fails to state a claim, "a district court must grant leave to amend the complaint unless amendment would be futile or inequitable." *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017). "When considering *pro se* complaints, courts should not deny leave to amend 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *El v. Wehling*, 548 F. App'x 750, 753 (3d Cir. 2013) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

In consideration of Plaintiff's *pro se* status, this Court grants Plaintiff leave to amend, except as to the request for attorney's fees, which is dismissed with prejudice. To the extent the Complaint is deficient, this Court cannot conclude that the opportunity to amend would be futile or inequitable with respect to all issues.

---

[12] Plaintiff states that the arrest itself without probable cause "was an intentional infliction of emotional distress." (Compl. ¶ 20; Pl.'s Resp. Defs.' Reply Br. 2, ECF No. 13).

## CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss is granted and Plaintiff is afforded leave to amend all claims, save the claim for attorney's fees under 42 U.S.C. § 1988.

An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II   J.